So our next case of the afternoon, people of the state of Illinois versus Terrence Norwood. For the appellant, Mr. Kimmel, and for the appellate, Ms. Brooks, you may proceed. May it please the court, counsel, I'm Jeremy Kimmel, and on behalf of the Office of the State Appellate Defender, I represent Terrence Norwood. At the moment of his arrest, when the police entered his bedroom, Mr. Norwood was standing naked with his hands up a full 10 feet away from the rifle in the corner of the bedroom with a large bed and a plastic filing cabinet obstructing his path to the gun. Mr. Norwood had already moved as far away from the gun as the room would allow by that point, placing it well out of his arm's reach. This court, for these reasons, should reverse his armed violence convictions in this case. Now, I find that this case has a lot in common with our Supreme Court's decision in People versus Smith, the case where the man dropped the handgun out of a second story window as the police were approaching the building. And the court held that that was not armed violence, even though the police literally saw him holding the gun in his hand through the window. I think that case provides the key for deciding this case. He dropped the gun before the police entered the residence, correct? I think that's the right view. That's a pretty key distinction, don't you think? The dissent and the concurrence in that case didn't find that it mattered. Obviously, the majority is the rule of law we have to follow. But I think the interesting thing about that case is it was decided on public policy grounds, the grounds that the Supreme Court said the armed violence statute is meant to uphold. And that's to make these dangerous situations, these police-citizen encounters where there's a felony being committed, to de-escalate those situations, to deter them from happening at all and to attempt to diffuse them when they do happen. And the court held that in that type of situation, convicting someone of armed violence would, quote, there were a number of opinions in that case. One of the dissents and one of the concurrences, the thing they fixated on was at that moment, when Mr. Smith was holding the gun, regardless of whether the police were inside or outside of the building at that point, he could have opened fire on them. And so there is a danger, there is danger in that situation. So that's the kind of internal conflict, if you want to call it that, of the Smith decision, is that the Supreme Court changed its mind from People v. Harre, a case in which they found it was okay to look back in time before the moment of arrest, and essentially created what I guess we could call a narrow exception, that in these types of police encounters, if the suspect shows an intent to de-escalate the situation, that that's not armed violence because it is. I thought the Harre case was a case involving the drugs and the gun being in a vehicle, and the defendant was riding on the hood of the car, and that the gun and the drug, both,  whereas the Smith case, like the Condon case, those are search warrant cases, right? That's all correct, Your Honor. Yeah, and that's what we have here, right? So why would this be more comparable to Harre? So I'd go into Harre a little more. I think that's the broad classification of those cases, but it's the same principle of law being applied in each of those situations, and I think there's something changed between Harre and Smith. This Court recognized that in People v. Nalon in an opinion written by Justice Connect. The Supreme Court changed its mind about whether at the moment of arrest you can look back in time. So in Harre, the suspect's sitting on the hood of the car. The reason he's sitting on the hood is he had to get out to open a gate. Before that, he was sitting in the car where these two guns were, and so by the time the police spring a trap and arrest him, he's kind of leaning towards this open window. He's gotten off the car, and he's right next to this open window. If he reaches inside, he's holding the guns, and the Supreme Court said at that time in Harre, not only is he guilty because the guns are within arm's reach at the time of arrest, but also if we look back, before he opened that gate, he was sitting in the car where the guns were, and so there was this issue of timing. Is it the moment of arrest? Is it before the moment of arrest? By the time of Smith, the Court said, no, it's at the moment of arrest, and this Court in People v. Nalon recognized that that part of Smith overrules sub silentio of Harre. And so I think we can say this is a house search case, this is a car search case, but it's really about what's the operative period of time that we're looking at. And I think that the problem with the State's theory of the case that we look earlier in time is not only that it violates that difference between Harre and Smith, it's also there's not enough facts in the record to support this lengthy set of assertions that the State makes about where in the room Mr. Norwood is located. We don't know what happens after his fiancee gets up. We don't even know what time it is that she gets up out of bed because she doesn't say. Wouldn't there be a reasonable inference that from the ten seconds that took the officers upon entry into the premises to reach the door of the bedroom, he would have had immediate access to the weapon? It depends where – I like to answer your questions with a yes or no, and so I apologize for not giving a clean yes or no, but I think the problem is we don't know where he was in the room. And the courts in Illinois are pretty uniform in defining immediate access as within arm's reach. Do we know the dimensions of the room, the bedroom? We know – the only measurement we have that's not a guess, I think one of the police officers makes a guess that it's a ten by ten, but the measurement we have in the record, which I've attached the photos to the opening brief, there's a stipulation to these measurements, is that it's ten feet from the rifle corner to the bottom of the farthest away pillow on the bed. By bottom, I mean not quite to the end of the bed. Well, Ben, that helps clarify my question. In ten seconds, the defendant could have covered ten feet, making the gun immediately accessible. That's my statement. My question is wouldn't that be a reasonable inference? I think within that amount of time, I agree that it's reasonable to say he could have crossed the bed. And the critical time is period involved in search warrant cases, the entrance or the entry into the residence by the officers. Would you agree with that? I would agree that there's language in people versus Condon and people versus – I apologize. I think it's people versus Smith. They both use the phrase when the officers enter, something to that extent. I'm not sure what the difference is between creating a sort of magical threshold at the front of the house versus encountering the defendant when he's in a different room. And I think there's some play between those two things. In this case, if I understand it correctly, he's told to get down on the ground, but instead he lays on the bed. Would you concede that at that moment in time, he was likely closer to the gun than he was when he was standing up at the end of the bed? I think it's certainly true he was closer than when he was told. He was told to get down. It wasn't necessarily on the ground, so it's not like he disobeyed an order. And the police officer, Detective Walter, certainly treated his act of laying on the bed as being cooperative. Now, if that defendant tells me I have that gun for protection, and while he doesn't explicitly say anything about it being loaded, it is loaded. Well, it's not much use to him for protection unless it's accessible. So his own description of having it, if he had it up in the attic loaded, it wouldn't be immediately accessible, or he wouldn't have accessibility. But in the corner of the room, particularly with the barrel down and the stock up, that makes it easier to grab it, I would think. I don't have a long gun. Could you take those factors into account? That he makes himself closer to the weapon when he lays down, and then in his view, apparently his view, it was in a place where he could get to it if he needed it for protection. So I think there's something to that point, and I address it near the end of the opening brief. I note that the State never addresses that. I called it the last factual wrinkle of the case. The State hangs its hat on what happens before. So I do think there's something there, that he is coming closer to the gun. It's certainly far different than dropping it out of the window. Right, and obviously it would be better from a legal sense if he was able to do that in this case. It would have been worse for him if he was midway through the act of trying to do that when the police entered. So I'd say given the factual confines, he found himself and he did about the best he could. And the police did treat him as the sort of poster child for cooperative defendants. The officer Walter gave him a pair of pants before handcuffing him. He handcuffed his hands in front of his body instead of behind, which is unusual. And then he assisted the police in calming down his agitated dog to prevent anyone from being hurt. So I mean, I think there are some facts in this case that make it a little different than Smith. The gun was still in the room. He did move closer to the gun. I'd say he was following the police command. The bed dominates the room. There's not really much room in this room that's not taken up by the bed. So laying on the bed is not an unreasonable response to that command. I do think that this case is somewhat like People v. Malgoza, where there was a gun in the back of a car, but there's simply no evidence in how close the defendant was to the gun, whether it was in the trunk, whether it was a hatchback, whether it was reachable. There's no evidence presented where on the bed he laid when he laid down. This is a big bed. If I lay – I'm a big person. If I lay on a bed, I can't reach things that are off the bed if I'm in the middle of the bed. And I know it might feel like splitting hairs that keep coming back to us within arm's reach, but that's the law that we have. And I think one of the most important lines in this Court's opinion in People v. Nalin was this discussion of the person is arrested outside, and there's some evidence that a gun was fired outside before the police arrived. By the time they get there, the gun is located in the house in a closet. And this Court held that's not armed violence because the gun is inside, the suspect is outside. But there's a line in that opinion that says to be immediately accessible, the defendant needed to be standing next to the open closet, next to the closet with the door open. And I think that line helps guide the analysis for the parameters of how close you need to be. You need to be within arm's reach. And so if it's not clear from the record how close he was either before under the State's theory or after when he lies down, I think that's not armed violence. And it's because he's acted to de-escalate the situation. He's done everything he can under the rubric of People v. Smith to not be a threat to the police and to be cooperative and to take himself out of that situation. I can't think of anything else he could have really done in this situation to present himself as less of a threat. If he had tried to exit the bedroom, that might have seemed to be aggressive. If he had tried to go out the window, he'd be escaping. He did about the best he could in this situation. I think on those same public policy grounds, People v. Smith, this should not be armed violence. He would still be found guilty of two lesser-included offenses. And so we're not talking about not sentencing this man to prison. It's just the lesser offense. And I think that aligns with those public policy interests I've talked about for People v. Smith. Now, it's the State's burden in this case to prove that Mr. Norwood was within arm's reach, that the gun was immediately accessible. And I think there's a factual deficit in the record in both of the situations where Mr. Norwood could have been closer to the gun, both when he was in bed initially and when he laid down in the bed afterwards. And I think this goes back to Smith, and that the facts here at the moment of arrest show an intent not to possess or control the gun. And that's the other piece that Smith adds. It's not just about the factual setup. It does, the defendant, show an intent to de-escalate and to move away from the gun, whether that's throwing it out the window or physically moving away from it, which was, I think, about the only thing available to Mr. Norwood here. The other case I would mention that I think is interesting to this analysis, it's an older case, People v. King from the 1980s. A woman answers the police knock at her door. She answers the door wrapped only in a blanket. She's clearly just come from her bedroom in this apartment. The police enter, and then there's a gun on the night table. She's clearly just come from that bed. But she's not guilty of armed violence. She's not physically close enough to the gun, and she hasn't shown an intent to possess the gun. And I think even though she left her bedroom in here, Mr. Norwood is still remaining in the bedroom. That, like People v. Smith, shows this sort of public policy interest. In the case you just described, what did you say the name of that was? King? It's People v. King. King. Where were the controlled substances in that case? Because I haven't read that case. I believe they were on the night table with the gun. And I'm glad Your Honor asked that question because it is not clear in the record, or at least I could not see in the record. It's not discussed where the drugs are in this case in the house, and that might be part because Mr. Norwood pled or stipulated. It was a little messy how that happened at the beginning. But that's all taken out of this case. So the only thing that's said is that there were yay amount of cocaine and yay amount of marijuana in the house. So there's at least nothing I saw in the records. There's nothing in the record that shows that the cannabis and the cocaine were in the bedroom? That is my memory. Where the gun was located. That is my memory of the record, and from looking at my notes in preparation for our argument. I may be incorrect or mixing my cases up, but that's my memory. If you are correct, you would say that that's a significant fact, would you not? I would say so, Your Honor. Okay. And I think that goes to People v. Smith as well. I don't believe in that case the drugs were in the room, the upstairs bedroom where he was found. The gun obviously was because he was holding it, but the drugs were found elsewhere. So I think it goes to that timing piece. Even under the state's theory, when he's in bed with his fiancée earlier, there's no evidence that the drugs were there then. I would note also there's no evidence that the gun was there where it was ultimately found, and this gets a little speculative. But the fiancée doesn't know the gun is there, according to her testimony. So if it's all about that moment when they're both in bed earlier, there's no evidence presented that the gun was in the corner of the room at that point in time. And I don't want to get too far afield, but she testifies that she doesn't know it's there at all. Well, that's where the officer found it. That is where the officer found it. I think it's a point to demonstrate further. We don't know what happened in that bedroom after the fiancée gets up. We don't know where Mr. Norwood is located. We have no evidence of where the rifle is located. I think there's an inference that it was always in that corner. It's just I wanted to demonstrate the point that there's no evidence presented that he didn't in fact move it to that corner as an attempt to distance it from himself, which would make this case look more like Smith. I can't point to anything that says that that did happen because, again, there's simply nothing. I'm a little bothered by the case, and you referenced the name and citation, but I'm remembering the statement and the facts rather than the name of the case, that the court went on to say if the closet door was open and the defendant was standing right by it, then that would be immediately accessible, except that that wasn't the facts of that case. It was not, Your Honor. So that sounds like an advisory opinion telling courts that that's how close you have to be or that's the proximity. The guy could be standing on the wrong side of the closet door to get in there. It's as if they were trying to draw a bright line when they didn't need to. Whereas they could have said, perhaps our finding would be different if such and such. But you've made it sound as if they were actually, this would be it. This is what would be required. I think it was an explanation of what might pass muster, and I believe Your Honor wrote that opinion. Well, I shouldn't have. Justice Stegman and I believe it was Justice Myerscough. Well, I think the comment was about Justice McMurrow's dissent in Smith that this court commented on. I agree. Yeah. Well, I still shouldn't have said that. I don't know about that. It's terrible when things come back to haunt you. I did what? I think it's still useful as just sort of a guidepost, even if it's dicta, even if it's advisory. This is non-armed violence. Here's an example that might be in the same fact-binding, and that can be helpful down the road. These cases are so fact-bound and so fact-specific that it feels almost like a Fourth Amendment search and seizure case. And so it's helpful to have somewhat analogous facts or really anything that points in that direction. I understand. For all these reasons, we would ask that this Court reverse Mr. Norwood's armed violence convictions. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court and Counsel. My name is Allison Paige Brooks. I appear on behalf of the people. There is a standard review question in this case, and it seems like what the defendant is also raising is a statutory interpretation argument as well. And statutory interpretation questions are reviewed de novo. But, of course, the facts in this case, because of the conflict in the evidence, would be subject to the ordinary standard review for sufficiency of evidence cases, reviewing the evidence in the light most favorable to the prosecution, taking all reasonable inferences in favor of the prosecution. But the defendant's suggested standard for what constitutes otherwise armed under the armed violence statute is that the defendant has to have, at the moment of arrest, within arm's reach, the weapon. And that does not seem to be supported by the case law, particularly the case that he cites, People v. Smith, which is decided on public policy grounds but is totally distinguishable in the facts, because in that case, the gun was dropped out of the window before the police even entered the building. And here, the defendant keeps a rifle, a large weapon, within reach of where he sleeps in bed as protection against break-ins. And this is the situation in which there is a very high danger for violence in a police raid search warrant execution context, because this is essentially what the police are doing. They're breaking into his house. The girlfriend or the fiancé, I'm sorry, opens the door to let the dog out. The police rush in. It takes 10 seconds to get there and to enter through the closed bedroom door to get through the house and enter in the bedroom. And relying only on the moment when the naked defendant is standing at the foot of the bed face-to-face with the police officer and measuring the distance to the rifle in the corner is too narrow to protect against the danger that the legislature wants to do, is to keep armed felons from having immediate access to weapons in these situations. And so the immediate potential for violence is the standard under Anderson, and the State's position is that there was, in fact, immediate potential for violence because the defendant had inferentially ready access to the weapon. The grip was up. It was behind the plastic filing cabinet, but still was able to be seen over that piece of furnishing in the corner, on the same side that the defendant slept. Now, I understand that the fiancé testified differently, but she was impeached substantively with her prior inconsistent statements as to the positioning of where they slept in the bed, vis-à-vis the closet and that side of the bed with the gun. So, taking the evidence most favorable to prosecution, the defendant was on that same side of the bed as the rifle. And, of course, that also makes sense inferentially because he kept the rifle there for self-protection, for protection in his home against break-ins. So, ideally, he wants to be closest to that if there was a sudden break-in. So, the situation here is the obstruction, the question of whether it was a large stuffed heart. Even if it was there, which the State's evidence shows it should not have been there, particularly because that object had other items on top of it, and the loft in the defendant's fiancé was processed damage about the fact that there was other objects on top of that filing cabinet instead of this large stuffed heart. So, her testimony could be rejected on credibility grounds. So, even if it were there, it was only simply a diminished obstruction. It's not the case like one where there was cannabis on the other side of the trailer, it was under 60 bags of marijuana, it was in a zipped bag, it was only a small handgun. Those sort of situations are distinguishable. This was in the same room. It was essentially unobstructed access, and there was plenty of time for him to reach the weapon if he chose to do so. Counsel, do you know where the cannabis and cocaine were found? No, I do not, Your Honor. And I don't know that it matters in terms of the fact that the status of the defendant at that time, because he was constructively possessing it in his house, was a felon. And as long as he had immediate access to the weapon, then he is otherwise armed for purposes of the armed violence statute. I'm not sure it is necessary for the contraband, cannabis or cocaine, to be in the same location as the weapon. Well, what if it was in his motor vehicle? He could still have constructive possession of that and the guns inside. That would be a problem for the State's case, wouldn't it? The State's position is no, Your Honor. I don't believe, I know of a case where as long as the defendant is committing a felony, that the contraband has to be located within proximity of the defendant as well as the weapon. I'm not sure that's a required element that the State has to prove. So, as long as he is, in fact, committing a felony. So, I'm not sure how that applies in non-contraband cases. But essentially, in this situation, I don't think it made any difference. And that's why the State didn't have a burden of proving exactly where in the house the contraband was located. It seems odd that the records does not reflect where the cannabis and cocaine were found. But I guess if it doesn't, it doesn't. Or could it be maybe it's there and we just have not discovered exactly where it is in the record, where it indicates the controlled substance was found? My understanding, I think, is that, if I recall, is that because this was part of a stipulation, that that wasn't presented with evidence. Well, the stipulation was to possession. Right. And I think there was a stipulation also to possession with intent to deliver. But the stipulation did not include the location of the cannabis or the two substances, correct? I believe so. I'm not sure, though. But essentially, that's not an element. That's the State's position, the exact location of the cannabis and the cocaine. Well, how about the case you just referenced a few minutes ago where whatever the illegal substance was, I forgot what you said, was completely far removed from where the defendant was, which was removed from where the gun was. Didn't you just reference a case such as that a minute ago? It was Shilato, which was, I think, a mobile home. That would seem to me to indicate the location of the controlled substance might be important in these types of cases, being armed violence cases. I don't believe it was the location of the controlled substance of the marijuana in that case that mattered, because I think the point of pointing it out was that the bags of marijuana being on top of a gun that was wrapped in a rag inside a closed, like, duffel-type bag on the opposite side of the room when the police entered that room, I think the point was there was obstructions that made it a lot harder for that gun to have been immediately accessible. And those bags of marijuana were part of that obstruction. Well, case law has developed quite a bit since I was actually a prosecutor. But it seems to me that part of the idea behind the armed violence was that if a person has cocaine or whatever the controlled substance might be and has a readily accessible weapon, a reasonable inference that they're going to protect that controlled substance and use that weapon if they have to. And for that reason, although I might be wrong, I think the location might be important, like the location of the controlled substances. Well, another purpose the legislature could have is that someone who is a felon might wish to avoid apprehension by the police, and being able to shoot police officers, for example, to prevent themselves from being apprehended could be a goal that an armed felon might have, regardless of where they're keeping their contraband. So I'm not sure it's a necessity that the contraband be located in the same room as the weapon and the defendant in terms of the purpose of the statute. That's why I'm asking the question. I don't know, but I will certainly look into that because I think it's important. I understand, Your Honor. And I'm not sure if there's a case out there that explains directly one way or the other whether that's an important element. With respect to the defense claim that there's not enough facts in the record as to what's happening in the 10 seconds, the defendant was naked, the bedroom door was closed. It was an early morning. You can infer that he was asleep or had been lying in bed. And so, I mean, reasonable inferences could be made. We don't have to have direct evidence of every single fact in the chain of facts to prove. And the Mogoso case, the weapon was either in the back seat or the trunk. Again, the seat in a vehicle is a large obstruction for a person who's in the front of the vehicle. So, again, existence of major obstructions makes it a lot harder for a weapon on the other side of major obstructions, like a seat in a vehicle or in the trunk of a car, to be immediately accessible. So that's what the analysis should focus on. The defendant claims he did the best he could. Well, that's not necessarily the rule under Smith. In Smith, the defendant actually successfully deposited the weapon outside of the window before the police entered. The defendant, sort of like the best he could standard, is not supported by the law, and it's not a good public policy for this court to adopt either for a defendant who intentionally keeps a firearm by his bed in order to protect his home from break-ins when he's a felon. And the King case, again, the defendant is out at door, the gun's in the bedroom, very far apart. Here, they were in the same room. And the Nalon case, again, the defendant was outside the house in Nalon, and the gun was in the closet inside the house. So, I mean, far removed. Those cases are easily distinguishable. So for those reasons, I request this court to affirm the conviction and entertain any other questions. Thank you. Rebuttal. May I please report? Just quickly on the kind of standard review issue. There's this factual question about whether this large stuffed heart was started out on top of the plastic filing cabinet. As the fiancé testified, that's where it lived, that's where it's at, or if the police then threw it on the bed, which they stripped the bed, the bed and the police found it was a mess of things they'd thrown onto the bed, and the heart's on top of that. So it clearly started from somewhere else. I would advance the idea that Detective Walters, the first person, the police officer in this room, he arrests Mr. Norwood, and he doesn't see a gun. It's not an enormous bedroom, and the gun is clearly sticking out. I would advance the idea that the only rational explanation is that this heart was there. But in the interest of preserving the standard of de novo here for undisputed facts, I don't think this one fact swings the case. And so if Your Honors believe that that is, in fact, a disputed fact, I'd submit, as I did in the briefs, that we can put that fact aside and say it doesn't actually matter. It's a pebble on the scales in this case. It's one more obstruction that gets in the way of him accessing that gun. But if that's a sticking point for the standard review, I don't think it's necessary for the outcome. And that's kind of the two-pronged argument we've made there, that it's really the only rational explanation for these facts. But if that's the only disputed fact here, it's not material enough to change the standard of review. There was no evidence presented at trial on the location of the two controlled substances. That I'm absolutely sure of. My memory and my notes don't include any reference anywhere in the record to the location of the cannabis and the cocaine. But I'm certain that no reference was brought into that trial. And so no evidence was presented on that portion of armed violence. My understanding of the case law is that there does need to be some timing component for committing, possessing the gun and committing the drug offenses or the other felonies at the same time. And that kind of goes to the... Well, what if you had, let's say, a two-story house with a basement, that the top story is where the bedroom is, that's where the guy is, and he's right beside the gun. But the drugs are in the basement. There would be, I believe... And there was enough proof to show that there's constructive possession of the, we'll say, cocaine. Would that be an armed violence because of the separation of the basement to the second floor of the house between where the weapon is, immediately accessible, and where the drugs are? I think it could be. Those facts aren't too far off from Smith, where he had the gun and no drugs in the second-story room. I think the drugs were on the first floor. I'm not exactly sure. The drugs were in the house. I think it's a factor that would weigh against. And so coupled with this... Well, the difference is, at the time that the police enter the house in Smith, there is no gun in the house. That's correct. Under my scenario, there is. That's correct. I would point to the State's argument that, you know, citing Anderson, that there's this immediate potential for violence before the police enter this bedroom. Once they're in between the house, the 10 seconds between entering the house and before they enter the bedroom, which is not really... Anderson has a car case. That's not what Anderson says. But going off of that theory, the same thing is true in Smith. You know, the moment before the police enter the building, that defendant could shoot at them. There's a potential for violence there based on this kind of freewheeling theory from Anderson. So I think some of those same concerns that the court did not find troubling in Smith also apply here. And we had a discussion about that. Is it the threshold of the house? Is it when they actually encounter the defendant? I'm not sure that there's a rationale for why it needs to be the threshold of the house, particularly because of the theory the State puts forward that there is this potential for violence. Well, I think that's what the common court said, if you read the language very closely. It's true, Your Honor. I struggle with that language a little bit because it seems to me it depends somewhat. I agree that's exactly what that opinion says. But if it depends – if it's really about encountering the defendant, and so you know that the gun is a different room than he's in, if it's when you enter the house, what if it's a big house and it takes you a while to find him and he's moved rooms before you – you know, it just creates factual complications. And I think the cleaner standard is kind of pushing it together. It took ten seconds from entering the house to encounter Mr. Norwood, and we don't know what was happening in that time. It's not just in those ten seconds we don't know what was happening. We don't know when his fiancée got up before that, and there's a gulf of time there that's unaccounted for. Thank you. Thank you. We'll take this matter under revising.